1

2

3

4

5

6

7

8                  **UNITED STATES DISTRICT COURT**

9                  **EASTERN DISTRICT OF CALIFORNIA**

10

11   GUADALUPE GARCIA,                          **1:13-cv-0008 GSA**

12              Plaintiff,

13        v.

14   CAROLYN W. COLVIN, Commissioner            **ORDER REGARDING PLAINTIFF'S**
     of Social Security                         **SOCIAL SECURITY COMPLAINT**
15

16              Defendant.

17

18

19

20                       **INTRODUCTION**

21        Plaintiff  Guadalupe Garcia ("Plaintiff") seeks judicial review of a final decision of the

22   Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for

23   disability insurance benefits and supplemental security income benefits pursuant to Title II and

24   Title XVI of the Social Security Act.[1]  The matter is currently before the Court on the parties'

25   briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United

26

27   ───────────────────
     [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule
     25(d) of the Federal Rules of Civil Procedures, Carolyn W. Colvin is substituted for Michael J. Astrue as the
28   defendant in this action.

                                    1

1    States Magistrate Judge.[2]

2                    **BACKGROUND AND PRIOR PROCEEDINGS**[3]

3         Born in 1959, Plaintiff has a high school diploma, as well as a nursing assistant certificate

4    ("CNA").  In the past, she has worked as a CNA and an apartment manager but she has been

5

6    unable to work for several years due to back, knee, and shoulder pain.  AR 205, 495-507.  She has

7    applied for social security benefits for several years.

8         Plaintiff first applied for Social Security Disability Insurance Benefits (DIB) and

9    Supplemental Security Income (SSI) on May 20, 2005, alleging that she became disabled on

10   June 4, 2004. AR 194-195. After her applications were denied, Plaintiff requested a hearing by

11   an Administrative Law Judge ("ALJ"). AR 65-69, 75-79, 80. ALJ Larry B. Parker held a hearing

12

13   on May 23, 2007. AR 539-557. On July 11, 2007, the ALJ issued an unfavorable decision. AR

14   37-46.

15        The Appeals Council remanded the decision for further administrative proceedings on

16   November 19, 2007. AR 47-50.  Following remand, ALJ Patricia Leary Flierl held a new hearing

17   on April 23, 2008. AR 510-538. On July 9, 2008, the ALJ again issued an unfavorable decision.

18   AR 25-33, duplicate at 51-59.

19
     The Appeals Council remanded the decision for further administrative proceedings on
20
     October 29, 2009. AR 61-64. ALJ Sharon Madsen held a hearing on June 8, 2010.
21
     On August 10, 2010, the ALJ again issued an unfavorable decision. AR 13-24. On October 31,
22
23   2012, the Appeals Council denied review (AR 2-4), and the ALJ's decision became the final

24   decision of the Commissioner which is the subject of the instant appeal.

25                           **MEDICAL RECORD**

26        The entire medical record was reviewed by the Court.  AR 240-484.  At issue here are the
27

_____

28   [2] The parties consented to the jurisdiction of the United States Magistrate Judge.  (*See* Docs. 7 & 9.)
     [3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

opinions of six doctors: 1) Dr. Troy Smith, M.D., a treating physician, 2) Dr. James Nugent,

M.D., a treating physician, 3) Dr. Jerry Smith, M.D., a treating physician, 4) Dr. Jessica Craig,

M.D., a treating physician, 5) Dr. Carmen Lopez M.D., a non-examining state agency physician,

and 6) Dr. Sadda Reddy, M.D., a non-examining state agency physician.

**a)**   ***Dr. Troy Smith***

Dr. Troy Smith ("Dr. T. Smith" or "Dr. Smith"), M.D., began treating Plaintiff for her

back impairment in February 2005. AR 304-07. At that time, Plaintiff was on temporary total

disability from work due to an on-the job injury that had occurred in August 2004. AR 305, 308.

Plaintiff had been experiencing lower back pain involving her right leg for six months. AR  304.

Dr. Smith diagnosed Plaintiff with degenerative lumbar disc disease. AR 306. He adjusted

Plaintiff's medications and prescribed physical therapy. AR 306.  At that time, Dr. Smith

expected to release Plaintiff to her pre-injury occupation but extended her disability through July

19, 2006. AR 399.

In March 2005, Plaintiff reported that she had been attending physical therapy but was

not doing much better. AR 292. Plaintiff wanted to continue the final few weeks of physical

therapy. AR 292. Dr. Smith recommended that Plaintiff consider epidural injections if she did not

gain any relief from physical therapy. AR 292.  Plaintiff began receiving epidural injections as

described in more detail below in May 2005.  AR 283.

In October 2005, Plaintiff reported that epidural injections had not helped her. AR 342.

Dr. Smith recommended that Plaintiff return to physical therapy and try traction. AR 342.

On October 6, 2005, he opined that Plaintiff had a permanent disability, would not be able to

return to her pre-injury work, and assessed her as limited to no lifting more than twenty pounds

and to no continuous walking, standing, or sitting. AR 344. In December 2005, Plaintiff reported

that traction had made her feel better at the time but made her feel much worse afterward so she

had stopped attending. AR 415. Dr. Smith felt that Plaintiff's only option was pain medication.

AR 415. He recommended that Plaintiff lose weight. Tr. 415. He continued treating Plaintiff with

medication through May 2006 at which time he determined that Plaintiff's recovery had

plateaued. Tr. 406, 410.  Dr. Smith opined that Plaintiff was temporarily totally disabled. Tr. 404.

In October 2005 and July 16, 2006, he indicated that Plaintiff would not return to her pre-injury

work.  AR 344, 399.

> b)      *Dr. James Nugent, M.D.*

Dr. Nugent began treating Plaintiff's back impairment in October 2006. AR 395-98.

Plaintiff was beginning to experience pain on her left side as well. AR 397. He continued

Plaintiff's medications, recommended a Toradol injection, and continued Plaintiff's permanent

disability status through March 2007. AR 382, 397.  In January 2007, Plaintiff reported difficulty

with prolonged walking. AR. 392. Plaintiff reported that she found a TENS unit to be beneficial,

but had difficulty applying it. AR. 392. Dr. Nugent recommended a corset with a TENS. AR. 392.

In May 2007, Dr. Nugent completed a statement assessing the severity of Plaintiff's

lumbar impairment. AR. 420-28. Dr. Nugent opined that Plaintiff would be limited to lifting and

carrying less than ten pounds, either frequently or occasionally, to occasional bending, and to

standing or walking for forty-five minutes in a workday. AR 426.

> c)      *Dr. Jerry Smith, M.D.*

Dr. Jerry Smith Smith began treating Plaintiff's back impairment in August 2007. AR

451.  Plaintiff reported a limited ability to sit, stand, and walk. AR 451. He diagnosed Plaintiff

with sacroiliitis and performed sacroiliac injections in September 2007. AR 450.  In October

2007, Plaintiff reported some relief but was experiencing muscle spasms in her back. AR 449. Dr.

Smith recommended physical therapy and a possible repeat of the injection. AR 449.  Plaintiff

was advised that she needed to lose weight in order for her condition to improve.  AR 449.

1

2   In February 2008, Plaintiff reported continued pain over her right SI joint following the

3   injections. AR 445. Dr. Smith diagnosed her with degenerative disc disease and SI joint

4   problems. He recommended physical therapy and consideration of further injections. AR 445.

5   Plaintiff started physical therapy in March 2008. AR 444, 473. The doctor declined to complete

6   disability forms for Plaintiff at that time because she had been noncompliant with her treatment to

7   the point that she required more injections to try to determine if her pain could be controlled. AR

8   444.

9       Plaintiff participated in physical therapy in March 2008 and underwent another round of

10  facet injections in April 2008. AR 442, 471.  Plaintiff reported improvement in her SI joint pain

11  and "some decrease" in her back pain following these injections. AR 441.

12      In May 2008, Dr. Smith agreed to help Plaintiff with her disability claim. AR 441.

13  However, he noted that Plaintiff has some degenerative disc disease and low back pain but only

14  on a temporary basis.  AR 441.  He advised that if this was going to be an ongoing problem, she

15  would need to get her primary physician to complete forms for her.  AR 441.

16

17      Dr. Smith did not see Plaintiff again until July 2008, at which time Plaintiff reported

18  minimal relief from her injections. AR 483.  He attributed some of Plaintiff's lack of recovery to

19  her weight. AR. 483. Dr. Smith noted Plaintiff was required to rest in a recliner one to two hours

20  a day.  AR 483.  However, on the same day, also noted that Plaintiff would need to sit in a

21  recliner and could only be up and walking for fifteen minutes at a time. AR 483.

22

23      **(d)**   *Dr. Craig*

24      On June 7, 2010, Dr. Jessica Craig M.D., completed a questionnaire. AR 480. Dr. Craig

25  opined that Plaintiff's back pain limited her to sitting for thirty minutes at a time and to standing

26  or walking for fifteen minutes at a time. AR. 480. Dr. Craig also noted that Plaintiff needed to lie

27  down or elevate her legs for four or five hours in an eight-hour day. AR. 480.

28

1

**(e)** *Dr. Carmen Lopez and Dr. Sadda Reddy*

In August 2005, Dr. Carlos, a non-examining state agency physician reviewed Plaintiff's

file and opined that Plaintiff is able to lift and/or carry twenty pounds occasionally and ten

pounds frequently, sit, stand, and/or walk six hours in an eight-hour day, and occasionally stoop,

crouch, crawl, kneel, and reach overhead with her left upper extremity, but she must have a sit or

stand option . AR  326-35. On January 6, 2006, Dr. Reddy affirmed the opinion of Dr. Lopez.

AR 365.

## THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, Plaintiff must establish that he or

she is unable to engage in substantial gainful activity due to a medically determinable physical or

mental impairment that has lasted or can be expected to last for a continuous period of not less

than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a

disability only if:

> his physical or mental impairment or impairments are of such severity that he is
> not only unable to do his previous work, but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of whether such work exists
> in the immediate area in which he lives, or whether a specific job vacancy exists
> for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established

a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §

404.1520(a)-(f).  The ALJ proceeds step by step in order and stops upon reaching a dispositive

finding that the claimant is disabled or not disabled.  20 C.F.R. § 404.1520(a)(4).  The ALJ must

consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in

substantial gainful activity during the period of alleged disability, (2) whether the claimant had

6

medically-determinable "severe" impairments,[4] (3) whether these impairments meet or are

medically equivalent to one of the listed impairments set forth in 20 C.F.R. 404, Subpart P,

Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to

perform his past relevant work,[5] and (5) whether the claimant had the ability to perform other jobs

existing in significant numbers at the regional and national level.  20 C.F.R. § 404.1520(a)-(f).

### 1.    Summary of the ALJ's Findings and Decision

Using the Social Security Administration's five-step sequential evaluation process, the

ALJ determined that Plaintiff did not meet the disability standard.  AR 16-24.  More particularly,

the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset

date of June 4, 2004 through her date last insured of December 31, 2009.  AR 18.  Further, the

ALJ identified lumbar degenerative disc disease, obesity, status post left knee arthroscopic

surgery, left knee chondromalacia, and left shoulder tendonitis as severe impairments.  AR 19-20.

Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or

exceed any of the listed impairments. AR19.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to

lift and/or carry twenty pounds occasionally and ten pounds frequently, sit, stand, and/or walk six

hours in an eight-hour day, and occasionally stoop, crouch, crawl, kneel, and reach overhead with

her left upper extremity, but she must have a sit or stand option.  AR 20-22. Based on the RFC,

the ALJ determined that Plaintiff could not perform her past relevant work, however, she could

perform other work that exists in national economy.  AR 23-24.

Here, Plaintiff argues that the ALJ erred by failing to properly assess the medical record

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).

[5] Residual functional capacity captures what a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

1    and by finding Plaintiff not credible.  (Doc. 17).

2                              **STANDARD OF REVIEW**

3

4    Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

5    whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards.

6    *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d

7    1071, 1074 (9th Cir. 2007).

8    "Substantial evidence means more than a scintilla but less than a preponderance."

9    *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).   It is "relevant evidence which,

10   considering the record as a whole, a reasonable person might accept as adequate to support a

11   conclusion."  *Id.*  Where the evidence is susceptible to more than one rational interpretation, one

12   of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id*.

13

14                                  **DISCUSSION**

15   **1.       The ALJ Properly Evaluated the Medical Evidence**

16   Plaintiff contends the ALJ improperly evaluated the medical record.  Specifically, Plaintiff

17   argues that the ALJ erred in giving great weight to the non-examining physicians' opinions.

18   Additionally, she argues that the ALJ misinterpreted Dr. Troy Smith's opinion, and she did not

19   give legally sufficient reasons for rejecting the opinion of Dr. Nugent.  Defendant argues that the

20   ALJ's RFC is supported by substantial evidence in the medical record.

21

22   **(a)      *The Legal Standards***

23   Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

24   who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant

25   (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining

26   physicians).  As a general rule, more weight should be given to the opinion of a treating source

27   than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647

28

                                              8

(9th Cir. 1987).  When the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984).  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a non-examining medical advisor.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the non-examining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . . ."  *Magallanes*, 881 F.2d at 752.  Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, contrary reports from examining physicians, and testimony from the claimant that conflicted with her treating physician's opinion.  *Id.* at 751-52.  Thus, the opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent, clinical findings or other evidence in the record.  *Thomas v. Barnhart*, 278 F. 3d 947, 957 (9th Cir. 2002).

When a nontreating physician's opinion contradicts that of the treating physician-but is not based on independent clinical findings, or rests on clinical findings also considered by the treating

physician-the opinion of the treating physician may be rejected only if the ALJ gives "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995); *Magallanes*, 881 F.2d at 751, 755 (quoting *Sprague v. Bowen*, 812 F.2d at 1230). Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. *Andrews*, 53 F.3d at 1041. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 750, (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986)). *Morgan v. Commissioner of Social Sec. Admin*. 169 F.3d 595, 600 - 601 (C.A.9 (Or.),1999).  Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d at 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir.1971)).

**(b)**     *Analysis*

*Dr. Troy Smith, M.D.*

Plaintiff argues that the ALJ misinterpreted Dr. Troy Smith's findings.  In particular, Plaintiff contends that the ALJ's RFC is not consistent because the RFC requires Plaintiff to stand and walk for approximately six hours out of an eight-hour day in contradiction to Dr. T. Smith's limitation that she could not continuously stand, walk, or sit. The Court disagrees.

When reviewing the medical evidence, the ALJ considered Dr. Troy Smith's findings that Plaintiff's condition was permanent and stationary and that Plaintiff could not push, pull, or lift over 20 pounds, could not continuously stand, walk, or sit, and should not kneel or squat.  AR 21, 344.  The ALJ observed that these restrictions were consistent with her RFC finding. AR 21.

In doing so, the ALJ gave greater weight to the non-examining doctors who found that

Plaintiff could carry twenty pounds occasionally and ten pounds frequently, that she could sit, stand, or walk six hours in an eight hour day, and occasionally climb ladders, ropes, scaffolds, stoop, crouch, crawl, and reach overhead.  AR 326-335.  In fact, Dr. Reddy, a second non-examining physician, specifically commented on Dr. Smith's limitations, and found that the above light work limitation is consistent with Dr. Smith's restrictions.  AR 366.  Here, the ALJ's RFC requires a sit or stand option that addresses the inability to continuously stand, walk, or sit. The RFC also addressed Dr. Smith's opinion that Plaintiff was unable to return to her pre-injury work since the ALJ found that Plaintiff could no longer perform her past relevant work but that there were other jobs that she could perform.

The Court is not persuaded by Plaintiff's argument that the ALJ relied on the fact that Plaintiff was only disabled of a period of less than twelve months as a reason for rejecting Dr. Smith's opinion. As noted above, the ALJ did not reject the opinion, but used it as a basis for the RFC.  Furthermore, it appears the ALJ made this this statement only for purposes of background since earlier in the opinion, the ALJ noted that as of February 4, 2005, Plaintiff had been certified for state disability.  AR 20.  This prior reference suggests that the ALJ recognized that Plaintiff had been classified as disabled by other doctors for a longer period. AR 20.

### Dr. James Nugent, M.D.

The ALJ also properly rejected the May 7, 2007 opinion of Dr. Nugent. AR 21, 419-428. The ALJ noted that Dr. Nugent opined that Plaintiff could stand and/or walk only forty-five minutes out of a six to eight  hour work day, lift and carry less than ten pounds occasionally and frequently, and occasionally bend. AR 21, 419-428.  However, the ALJ determined that Dr. Nugent's opinion was entitled to "little weight" because "a less than sedentary residual functional capacity is not supported by the medical evidence … which reflects minimal objective findings on physical examinations and diagnostic studies, as well as

improvement of the claimant's back pain with conservative treatment, improvement of the

claimant's knee pain following surgery, and no treatment for her shoulder pain" AR 21.

These findings are supported by the ALJ's decision and the objective medical evidence.

For example, the lumbar x-ray taken in December 2004 was normal.  AR 269.  In January 2005,

an MRI revealed that Plaintiff had only minimal disc bulges at the L4-L5 and L5-S1, and mild

bilateral nural foraminal narrowing at L5-SI level. AR 252-253.  Plaintiff did receive some relief

from the facet blocks and epidural injections in the past AR 349, 441, 449.

Furthermore, the ALJ appropriately noted that after Dr. Nugent's opinion in May 2007,

Plaintiff underwent knee surgery and responded well to this treatment.  AR 21, 429.  She

indicated that she had no pain and her left knee range of motion was "good."  AR 429.  In

addition, in January 2007, her musculoskeletal examination of her back revealed 100 percent

flexion, 100 percent extension, 90 percent left lateral and100 percent right lateral movement of

the lumbar spine. AR 392.  As of January 2007, Plaintiff was using her medication treatment

appropriately and found relief in a TENS unit.  AR 392.

The Court recognizes that Plaintiff was seen by Dr. Jerry Smith in July 2008, at which

time Plaintiff reported minimal pain relief from her injections.  However, three months earlier, in

May 2008, Dr. Smith noted Plaintiff had some degenerative disc disease and low back pain but

only on a *temporary* basis.  AR 441.  In July 2008, Dr. Smith indicated that Plaintiff was required

to rest in a recliner one to two hours a day, however, in the same letter, he also noted that Plaintiff

would need to sit in a recliner and could only be up and walking for fifteen minutes at a time.[6]

The Court gives this letter little weight given these internal inconsistencies and an examination of

---

[6] Dr. Smith's July 2008 notes were submitted to the Appeals Council after the administrative hearing so the ALJ did not consider these records.  AR 483.  The Appeals Council considered the records and found that there was no basis to change the ALJ's decision AR 6-7, 9.  When the Appeals Council considers new evidence, the evidence becomes part of the administrative record and the district court must consider it when reviewing the Commissioner's final decision. *Brewes v. Commissioner*, 682 F.3d 1157 (9th Cir. 2012).  Accordingly, the Court has considered this evidence and finds that it does not support altering the commissioner's final decision for the reasons set forth above.

the medical record as a whole.  Moreover, the Court notes that there is no evidence in the medical record that Plaintiff received additional treatment or saw a doctor for her reports of pain after Dr. Smith's July 2008 visit until over two years later when she saw Dr. Craig in June 2010.

### *Dr. Jessica Craig, M.D.*

The ALJ also gave specific and legitimate reasons for rejecting Dr. Craig's opinion issued on June 7, 2010.  In this opinion, Dr. Craig opined Plaintiff's back pain limited her to sitting for thirty minutes at a time and to standing or walking for fifteen minutes at a time. AR. 480. Dr. Craig also noted that Plaintiff needed to lie down or elevate her legs for four or five hours in an eight-hour day. AR. 480.

The ALJ specifically noted that Dr. Craig's opinion lacked objective findings, it was based only on Plaintiff's subjective complaints, it was inconsistent with the overall medical record (as outlined above), and there was no indication how frequently the doctor had examined or treated Plaintiff.

If a treating physician's opinion is not given controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(c)(2) to consider the factors listed in Section 404.1527(c)(2)-(6) in determining what weight to accord the opinion.  Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(c)(2)(i)-(ii).  In this case, substantial evidence supports the ALJ's finding since it is unclear how Dr. Craig arrived at her opinion.  Moreover, there is no other evidence in the record establishing that Plaintiff had an ongoing relationship with the doctor.  Given the above, it appears that the doctor formulated the assessment based on Plaintiff's complaints, which as explained below, the ALJ properly found not to be credible.  An ALJ may reject the treating

13

physician's opinion because it was based on the claimant's discredited subjective complaints.

*Thomas*, 278 F.3d at 957; *Fair v. Bowen*, 885 F.2d at 605 (9th Cir. 1989).  *Morgan v.*

*Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion

based to a large extent on claimant's own accounts of symptoms and limitations may be

disregarded where those complaints have been properly discounted).  Accordingly, the ALJ

properly rejected this opinion

Finally, it is well established that under the Social Security regulations and rules, a

treating physician's disability opinion regarding disability is not entitled to controlling weight or

any special significance, because the ultimate issue of disability is for the Commissioner to make,

taking into account a variety of factors.  20 C.F.R. § 404.1527(d)(3) (opinion sources on issues

reserved to the Commissioner are not given "any special significance"); 20 C.F.R. §

404.1527(d)(1) ("[a] statement by a medical source that you are 'disabled' or 'unable to work'

does not mean that we will determine that you are disabled;"); Soc. Sec. Ruling (SSR) 96-5p,

1996 WL 374183, at *1, *2, *5 (July 2, 1996) ("adjudicator is precluded from giving any special

significance" to an opinion from a treating source on issues reserved to the Commissioner);

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (treating physician's opinion is not

binding on the ultimate determination of disability); *see also McLeod v. Astrue*, 640 F.3d 881,

885 (9th Cir. 2011) ("[a] disability is an administrative determination of how an impairment, in

relation to education, age, technological, economic and social factors, affects ability to engage in

gainful activity").

Here, the ALJ thoroughly reviewed and summarized the medical record, set forth her

interpretation of conflicting medical evidence, and gave specific and legitimate reasons for

rejecting the treating physicians' opinions.  Even if the medical evidence is "susceptible to more

than on rational interpretation, it is the ALJ's conclusion that must be upheld.  *Burch v.Barnhart*,

14

1

400 F. 3d 767, 679 (9th Cir. 2005). Accordingly, the ALJ's assessment of the medical record is

2

supported by substantial evidence.

3

        **2.**        **The ALJ's Findings Regarding Plaintiff's Credibility are Proper**

4

Plaintiff contends ALJ Madsen failed to provide clear and convincing reasons for

5

rejecting her testimony. (Doc. 17 at 21-26). In reply, the Commissioner asserts that the ALJ's

6

credibility findings are supported by substantial evidence. (Doc. 22 at 11-13).

7

        **(a)**        *The Legal Standards*

8

A two step analysis applies at the administrative level when considering a claimant's

9

credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must

10

produce objective medical evidence of an impairment that could reasonably be expected to

11

produce some degree of the symptom or pain alleged. *Id.* at 1281-82. If the claimant satisfies the

12

first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony

13

regarding the severity of his symptoms only if he makes specific findings and provides clear and

14

convincing reasons for doing so. *Id.* at 1281. The ALJ must "state which testimony is not

15

credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161

16

F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why

17

Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the

18

ALJ's conclusion is supported by substantial evidence."); SSR 96-7p (ALJ's decision "must be

19

sufficiently specific to make clear to the individual and to any subsequent reviewers the weight

20

the adjudicator gave to the individual's statements and reasons for that weight.").

21

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v.*

22

*Soc. Sec'y Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). These factors include the claimant's

23

reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

24

testimony by the claimant that appears less than candid, unexplained or inadequately explained

25

26

27

28

15

1    failure to seek treatment, a failure to follow a prescribed course of treatment, the claimant's daily

2    activities, the claimant's work record, or the observations of treating and examining physicians.

3    *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).  "An ALJ is not 'required to

4    believe every allegation of disabling pain' or other non-exertional impairment."  *Orn*, 495 F.3d at

5    635. (citation omitted).

6    **(b)**    ***Analysis***

7

8        The first step in assessing Plaintiff's subjective complaints is to determine whether

9    Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged.

10   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that Plaintiff

11   had the severe impairments of lumbar degenerative disc disease, obesity, status post left knee

12   arthroscopic surgery, left knee chondromalacia, and left shoulder tendonitis . AR 18.  The ALJ

13   found that Plaintiff's "medically determinable impairments could reasonably be expected to cause

14   the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and

15   limiting effects of these symptoms are not credible to the extent they are inconsistent with the

16   above residual functional capacity assessment."  AR 22.  This finding satisfied step one of the

17   credibility analysis.  *Smolen*, 80 F.3d at 1281-82.

18        Because the ALJ did not find that Plaintiff was malingering, she was required to provide

19   clear and convincing reasons for rejecting Plaintiff's testimony.  *Smolen*, 80 F.3d at 1283-84;

20   *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (as amended).  When there is evidence of an

21   underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the

22   severity of his symptoms solely because they are unsupported by medical evidence.  *Bunnell v.*

23   *Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7.  Moreover, it is not sufficient for the ALJ

24   to make general findings; he must state which testimony is not credible and what evidence in the

25   record leads to that conclusion.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*,

26

27

28

1   947 F.2d at 345-46.

2       ALJ Madsen relied on the following as a basis for rejecting Plaintiff's credibility: 1) the

3   lack of supportable medical evidence, 2) improvement in back and knee pain with treatment, 3) a

4   lack of treatment for her shoulder, and 4) that Plaintiff engages in a wide range of activities of

5   daily living such as taking care of her personal needs, doing household chores with rest breaks.[7]

6   AR 22.  A review of the record reveals that the ALJ's credibility determination was proper.

7

8       First, the ALJ noted valid concerns that Plaintiff's claims were not substantiated by the

9   medical record as previously outlined.  An ALJ may consider inconsistencies between the record

10  and medical evidence when rejecting a claimant's credibility. *Johnson v. Shalala*, 60 F.3d 1428,

11  1434 (9th Cir.1995); 20 C.F.R. § 416.929 (objective medical evidence can be used in determining

12  credibility; inconsistencies in evidence will support a rejection of credibility); SSR 96-7p

13  (objective medical evidence is a useful indicator to assist in making a reasonable conclusion

14  about credibility and the ability to function).

15

16      Second, the ALJ's finding that Plaintiff experienced improvement with treatment is

17  supported by the record and is consistent with the RFC.  For example, the ALJ noted that "the

18  medical records suggest that the claimant's back and knee conditions had improved with

19  treatment." AR 22.  As previously noted, Plaintiff reported that the TENS unit and other methods

20  of treatment were "very beneficial" to her back pain.  AR 20, 392, 452. Plaintiff's doctor noted

21  that Plaintiff had improvement in her back pain following injections in 2007 and 2008. AR 20,

22  349-350, 444 ("overall she was somewhat improved"), 445 ("She actually noted that she was

23  getting somewhat better"), 449 ("some relief"). Likewise, following knee surgery, Plaintiff had

24

25

26  [7] Plaintiff argues that the ALJ also relied on Plaintiff's non-compliance as a basis for the adverse credibility finding.
    However, the Court does not agree that the ALJ found Plaintiff not credible on that basis.  Therefore, it is not
27  necessary to address this argument.  Even assuming the ALJ erred on this basis, other clear and convincing reasons
    were provided for properly discounting Plaintiff's credibility. *See e.g., Batson v. Commissioner of Social Security,*
28  359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have
    been in error).

good range of motion and reported that she was doing "very well" and that she was "very pleased

with her results" AR 429. Therefore, the ALJ properly considered Plaintiff's improvement with

treatment. *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be

controlled effectively with medication are not disabling for purposes of determining eligibility for

SSI benefits."); *See* 20 C.F.R. § 404.1529(c)(3)(v) (an ALJ may consider treatment that you

receive for relief of your pain or other symptoms).

Furthermore, the ALJ observed that Plaintiff had not had any treatment for her left

shoulder. AR 22. Therefore, the ALJ properly concluded that Plaintiff's failure to seek

treatment for shoulder pain undermined her allegations of disabling pain. AR 22. *See Burch*, 400

F.3d at 681 (claimant's lack of motivation to seek physical therapy or other such treatment was

"powerful evidence" that pain not as severe as alleged); *Fair*, 885 F.2d at 603 (unexplained

failure to seek treatment sufficient to discredit allegation of disabling pain).

Finally, the ALJ noted that Plaintiff testified she can take care of her own personal needs

despite her pain. AR 22. An ALJ can look to daily living activities as part of the credibility

analysis. *Burch*, 400 F.3d at 680; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also*

*Thomas*, 278 F.3d at 958-59. If a claimant is able to spend a substantial part of his day engaged in

pursuits involving the performance of physical functions that are transferable to a work setting a

specific finding as to this fact may be sufficient to discredit a claimant's allegations. *Morgan v.*

*Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  The ALJ must make

"specific findings relating to [the daily] activities" and their transferability to conclude that a

claimant's daily activities warrant an adverse credibility determination. *Orn*, 495 F.3d at 639.

Here, the ALJ observed that Plaintiff testified that she could do household chores with rest

breaks, do laundry with her son's help, cook, shop with her husband, visit with family once in a

while, and care for her own personal needs, except putting on her shoes that were not "slip-ons."

18

1    AR 22, 491-493. While it is true that "one does not need to be 'utterly incapacitated' in order to

2    be disabled," *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001), the extent of Plaintiff's

3    activity here supports the ALJ's finding that Plaintiff's reports of her impairment were not fully

4    
5    credible. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,1227 (9th Cir. 2009); *Curry v.*

6    *Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of

7    her personal needs, prepare easy meals, do light housework and shop for some groceries ... may

8    be seen as inconsistent with the presence of a condition which would preclude all work activity")

9    (citing *Fair*, 885 F.2d at 604). In this case, the ALJ specifically found that Plaintiff's daily

10   activities are consistent with the RFC which addresses transferability. AR 22.

11          Therefore, given the above, contrary to Plaintiff's assertions, the ALJ provided clear and

12   convincing reasons that are supported by substantial evidence when concluding Plaintiff's

13   subjective symptom testimony was not credible.   Here, the ALJ clearly identified what testimony

14   she found not credible and what evidence undermined Plaintiff's complaints. *Lester*, 81 F.3d at

15   834.  If the ALJ's finding is supported by substantial evidence, the court "may not engage in

16   
17   second-guessing." *Thomas*, 278 F.3d at 959.  Accordingly, the ALJ's credibility findings are free

18   of legal error.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

                                                    19

1

**CONCLUSION**

2

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

3

evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

4

DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

5

6

Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn

7

W. Colvin, Commissioner of Social Security and against Plaintiff Guadalupe Garcia.

8

9

IT IS SO ORDERED.

10

Dated:   **March 18, 2014**                      **/s/ Gary S. Austin**

11

UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20